UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SONIA MCNAMARA                                    CIVIL ACTION

VERSUS                                            NO. 24-607

AMERICAN SECURITY                                 SECTION M (5)
INSURANCE COMPANY, *et al.*

## ORDER & REASONS

Before the Court is a motion for summary judgment filed by defendants American Security Insurance Company ("American Security") and Assurant, Inc. ("Assurant") (together, "Defendants").[1] Plaintiff Sonia McNamara responds in opposition,[2] and Defendants reply in further support of their motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court grants the motion.

**I.   BACKGROUND**

This action arises out of alleged damage to McNamara's home in Houma, Louisiana ("the Property"), caused by Hurricane Ida on August 29, 2021.[4] McNamara alleges that Defendants issued a homeowners insurance policy to her for the Property under policy number 2MR1500412921 and/or MIP-RCH-01500-00 ("the Policy").[5] McNamara reported the alleged losses to Defendants, who made payments of $60,613.87 and $7,862.59 for damage to her dwelling and other structures on the Property, respectively.[6] McNamara alleges that Defendants "failed to timely and adequately tender payment" to her under the Policy, and asserts claims for breach of

---

[1] R. Doc. 12.
[2] R. Doc. 15.
[3] R. Doc. 16.
[4] R. Doc. 1-1 at 3.
[5] *Id.*
[6] R. Doc. 1-4 at 1-2.

insurance contract, violations of La. R.S. 22:1892 and 1973, intentional infliction of emotional distress, and negligent claims adjusting.[7]

## II.  PENDING MOTION

In their motion for summary judgment, Defendants contend that the Policy issued by American Security is a force-placed policy whereby all benefits are payable to McNamara's lender, Specialized Loan Servicing, LLC ("Specialized Loan Servicing"), not McNamara.[8] Defendants further assert that the Policy identifies McNamara as "borrower," which does not render her a payee or third-party beneficiary of the Policy.[9] Defendants thus argue that McNamara lacks standing to enforce the Policy or to assert insurance bad-faith claims against them.[10] Defendants also contend that McNamara has no cognizable claims against Assurant, a holding company which owns American Security, as it is not an insurer, and there is no evidence that Assurant issued any policy for the Property.[11]

In opposition, McNamara first argues that summary judgment is premature as discovery is incomplete.[12] McNamara also contends that Defendants have not presented competent evidence in support of their motion because no affidavit or certification was attached to the copy of the Policy Defendants provided.[13] Next, McNamara asserts that Defendants' actions during the claims-handling process contradict their assertion that McNamara is not an insured under the

---

[7] R. Doc. 1-1 at 4-8 (quote at 4).
[8] R. Doc. 12-1 at 2-3.
[9] *Id.* at 2-3, 5-6.
[10] *Id.* at 5-6.
[11] *Id.* at 2, 5.
[12] R. Doc. 15 at 3-4.
[13] *Id.* at 4-5. On these same grounds, McNamara moves to strike the version of the Policy Defendants attached as an exhibit to their motion for summary judgment. R. Doc. 14. Rule 56 of the Federal Rules of Civil Procedure only requires that summary-judgment evidence be "presented in a form that *would be* admissible in evidence." Fed. R. Civ. P. 56(c)(2) (emphasis added). Thus, certification of the Policy was not necessary for purposes of summary judgment. Nonetheless, Defendants submit a certified copy of the Policy with their opposition to McNamara's motion to strike. R. Docs. 17; 17-1. Accordingly, McNamara's motion to strike (R. Doc. 14) is DISMISSED AS MOOT.

Policy.[14]   Specifically, McNamara points to documents in which Defendants "continuously referred to [McNamara] as the named insured, insured, and client" that she contends would "lead[] any reasonable person to conclude that [she] was in fact an insured under the policy."[15]   In the alternative, McNamara argues that this conduct, and payments "issued and made payable directly to [her]," raise a genuine issue of material fact as to whether she is a third-party beneficiary of the Policy.[16]

In their reply, Defendants deny that any genuine issue of material fact exists as to the terms and provisions of the Policy, noting that the copies of the Policy produced by McNamara in discovery and attached to Defendants' motion are identical.[17]   Defendants also assert that they are not required to authenticate or produce a certified copy of the Policy under Rule 56.[18]   Defendants then reiterate that the Policy terms clearly identify Specialized Loan Servicing as the "named insured" and McNamara as "borrower," and the Policy identifies no "additional insureds."[19]   Next, Defendants argue that McNamara is not a third-party beneficiary under Louisiana law because the Policy does not "manifest a clear intention to benefit [McNamara]."[20]   Defendants conclude by asserting that the "casual references" to McNamara as "named insured," "insured," "client," or "additional insured" during the claims-handling process do not alter the terms of the Policy,[21] citing in particular the Policy's non-waiver clause.[22]

---

[14] R. Doc. 15 at 5-6.
[15] *Id.* (quote at 5).
[16] *Id.* at 6-7 (quote at 7).
[17] R. Doc. 16 at 1-2.
[18] *Id.* at 2.
[19] *Id.* at 3.
[20] *Id.* at 4.
[21] *Id.* at 5-7.
[22] *Id.* at 7.

### III.  LAW & ANALYSIS

#### A. Legal Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd*., 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary-judgment

motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A), (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

**B. Analysis**

Under Louisiana law, an insurance policy, like any other contract, is construed according to the general rules of contract interpretation set forth in the Louisiana Civil Code. *Q Clothier New Orleans, L.L.C. v. Twin City Fire Ins. Co.*, 29 F.4th 252, 256-57 (5th Cir. 2022) (citing

*Supreme Servs. & Specialty Co. v. Sonny Greer, Inc.*, 958 So. 2d 634, 638 (La. 2007)). "Courts must first consider the parties' intent by examining the words of the policy." *Id.* at 257 (citing *Sims v. Mulhearn Funeral Home, Inc.*, 956 So. 2d 583, 589 (La. 2007); La. Civ. Code arts. 2045-2046). In examining the terms of the policy, "'words and phrases in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning, in which case the words must be ascribed their technical meaning.'" *Id.* (quoting *Sims*, 956 So. 2d at 589). "'When the words of an insurance contract are clear and unambiguous and lead to no absurd consequences, courts must enforce the contract as written and may make no further interpretation in search of the parties' intent.'" *Id.* (quoting *Gorman v. City of Opelousas*, 148 So. 3d 888, 982 (La. 2014)). A court cannot exercise "inventive powers to create an ambiguity where none exists or [make] a new contract when the terms express with sufficient clearness the parties' intent." *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003).

"A plaintiff may sue under an insurance policy if she is a named insured, an additional named insured, or a third-party beneficiary." *Butler v. Am. Sec. Ins. Co.*, 2019 WL 1714231, at *1 (M.D. La. Apr. 17, 2019) (citing *Joseph v. Hosp. Serv. Dist. No. 2 of Par. of St. Mary*, 939 So. 2d 1206, 1211-12 (La. Oct. 15, 2006)). The Policy is a force-placed policy, which is meant to protect Specialized Loan Servicing's interest in the Property as mortgage lender. *See Williams v. Certain Underwriters at Lloyd's of London*, 398 F. App'x 44, 45 (5th Cir. 2010) ("[A] 'force-placed' (also known as 'lender-placed') policy … insures the lender's collateral when the borrower fails to maintain a specific type of insurance. A force-placed policy allows the lender to protect its exposure on a property up to the amount of the mortgage on the date of issuance."). The Policy declarations therefore identify Specialized Loan Servicing as the "named insured" and McNamara

6

as "borrower."[23]  The "Loss Payment" provision of the Policy, found at paragraph 12(c) of the Policy's "Conditions" section (the "Loss Payment Provision"), states:

> Loss will be made payable to the named insured.  No coverage will be available to any mortgagee other than that shown as the named insured on the Declarations.  The undisputed portion of the loss will be payable within 30 days after we receive your proof of loss.[24]

McNamara does not deny that Specialized Loan Servicing is the only named insured identified by the Policy but contends that Defendants' conduct, specifically their "continuously referr[ing] to [McNamara] as the named insured, insured, and client" in claim documents and correspondence and issuing payment to McNamara and Specialized Loan Servicing as co-payees, raises a genuine issue of material fact as to whether McNamara is an insured under the Policy or, alternatively, a third-party beneficiary of the Policy.[25]

The conduct cited by McNamara does not alter the terms of the Policy.  McNamara points out that the Policy "can be changed in writing" and that "[t]he named insured per all of the claim file documentation cited above is [McNamara]."[26]  However, the same provision that requires any "waiver or change of a provision of [the Policy to be] in writing" also states:

> No course of conduct nor any … nonenforcement of [Policy] conditions, or the like, extended at or over any time or from time to time by [American Security] to … anyone shall waive, nullify, or modify any [Policy] provision as to any other occasion or waive, nullify, or modify any other [Policy] provision.[27]

Thus, to the extent that McNamara argues that Defendants' conduct or statements during the claims-handling process amended the Policy to make her a "named insured" or waived the terms of the Loss Payment Provision, such an argument is precluded by the Policy's waiver provision.

---

[23] R. Doc. 17-1 at 5.
[24] *Id.* at 20 (emphasis omitted).
[25] R. Doc. 15 at 5-7 (quote at 5).
[26] *Id.* at 5, 6.
[27] R. Doc. 17-1 at 14.

7

McNamara alternatively argues that she is a third-party beneficiary of the Policy. Under Louisiana law, a contract that benefits and is enforceable by a third party, or a *stipulation pour autrui,* is only created when "1) the stipulation for a third party is manifestly clear; 2) there is certainty as to the benefit provided the third party; and 3) the benefit is not a mere incident of the contract between the promisor and the promisee." *Joseph*, 939 So. 2d at 1212. Courts are not to presume the existence of a *stipulation pour autrui* in a contract. *Id.* Moreover, "[t]he party claiming the benefit [of a *stipulation pour autrui*] bears the burden of proof." *Id.* Here, the Loss Payment Provision clearly manifests an intent that Policy benefits be paid to Specialized Loan Servicing as the "named insured," not McNamara. Other courts interpreting the same Loss Payment Provision have reached the same conclusion. *See Brown v. Am. Mod. Home Ins. Co.*, 2017 WL 2290268, at *6 (E.D. La. May 25, 2017) ("[T]here is no manifestly clear intention for the American Security policy to provide a benefit to plaintiffs that would be sufficient to create a stipulation *pour autrui*, and plaintiffs cannot sue American Security for breaching the insurance contract."); *Turner v. Am. Sec. Ins. Co*., 2022 WL 696907, at *2 (W.D. La. Mar. 8, 2022) ("Here the policy clearly identifies plaintiff as 'borrower,' but not as a named insured. It does not reflect an intent, let alone a clear one, to benefit plaintiff."); *Butler*, 2019 WL 1714231, at *2 ("This language [*i.e.,* the Loss Payment Provision] reflects an intent to benefit [the lender]. It does not reflect an intent – much less a 'clear' one – to provide a 'certain benefit' to Plaintiff that is not 'merely incidental' to the insurance contract between [the lender] and American Security." (alterations and footnote omitted)).

And Defendants' conduct, including issuing payment to McNamara as co-payee with Specialized Loan Servicing,[28] has no bearing on whether a *stipulation pour autrui* was created by

---

[28] R. Doc. 15-7 at 2-3.

the Policy. *See Butler*, 2019 WL 1714231, at *2 n.5 ("To find support for her third-party-beneficiary argument, Plaintiff looks beyond the language of the policy [to] argue[] that because American Security issued a claim payment naming [her] and [lender] as co-payees, [lender] and American Security 'clearly intended' that she benefit from the policy. The argument fails to persuade: it is the contract – not the parties' conduct – that must 'manifest a clear intention to benefit the third party.'" (alterations and internal citations omitted) (quoting *Joseph*, 939 So. 2d at 1212)).

In sum, then, McNamara is neither an insured nor a third-party beneficiary under the Policy and therefore lacks standing to enforce it. Consequently, she also lacks standing to pursue bad-faith claims against Defendants under La. R.S. 22:1892 and 1973. *See Team Contractors, L.L.C. v. Waypoint NOLA, L.L.C.*, 780 F. App'x 132, 134-36 (5th Cir. 2019).

### IV.   CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendants' motion for summary judgment (R. Doc. 12) is GRANTED, and McNamara's claims against them are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 15th day of January, 2025.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE